Opinion or the Coub/t.
IN pursuance to a contract made between these par-. ties, the following writing was executed by them, to wit: “ Article of agreement made and entered into this 28th day of June 1819, between David Herndon of the county of Breckinridge and state of Kentucky of the one part, and David J. Lewis of the county of Albemarle and state of Virginia of the other part, witnefseth: The said Herndon has this day bargained and sold a cerlain tract of land, lying and being oif the waters of Long *359 Lick creek, on which he now resides, containing by plat and patent two hundred and twenty-four acres and twenty-two poles, and bounded by the following tracts of land, beginning at the corner of Thomas Owing, jun. and Thomas Owing, sen. and Levi-and John Moorman; for and in the valuable consideration of two thousand dollars, to be paid in three equal annual payments, the first payment to be made on the first day of May 1820, and on the first day of May 1821, and 1822, and the deed to be made on the day of the first payment as above mentioned. Possession to be given on the ISthofNovember 1819. Whereas the parties have hereunto set their hands and seals, the 28th June 1819.
DAVID HERNDON.
DAVID J. LEWIS.”
To enforce the specific execution of this contract, Herndon, on the 20th of October 1820, exhibited his bill in equity, suggesting that indue time he would, through the court, tender to Lewis a good and sufficient title to the land described in the written agreement, and alleging that in pursuance of the agreement, Lewis,on the 15th ofNovember 1819, took possession ofthe land, and has occupied the same ever since; but that notwithstanding the first instalment has becomepayable, Lewis has failed and refuses to pay the amount thereof, and gives it out in speeches that he never will make payment, &c. The bill makes Lewis a defendant, and prays for a specific enforcement of the contract, &c.
Lewis answered, admitting the contract set forth in the written article of agreement. He states, that being desirous to remove with his family from Virginia, where he then lived, to some healthful situation in the county ofBreckinridge, he met with Herndon, who propos-. ed selling the land upon which he then lived; that after some conversation on the subject, the terms of sale were agreed on between them; but that before the writing was executed, having understood difficulties frequently occurred in relation to the title of land in this country, and having also been informed, that a disease commonly called the milk or puking sickness, had often visited certain portions and situations of the county of BrecMilrj'clge with great fatality, threatening whole neighborqfjqds with ,death and desolation, and bidding defiance tp‘medica]¿kill, and which disease was thought by many to arise from local causes hitherto unknown to *360 the medical world, he was induced to enquire of Herb* don whether the disease had ever visited his neighbor* hood, and whether his title was indisputable; and that in reply Herndon assured him the disease had never existed within less than seven miles of the land, and that his land was not only clear of dispute, but that his tRle was indisputable; and that, relying on these assurances, he closed the contract as set out in the written agreement. He states that the disease alluded to had, in fact, to the knowledge of Herndon, not only prevailed within less than seven miles of the land, but had actually visited the immediate vicinity with great virulence; and he denies that Herndon had the title he pretended to sell, and calls upon him for due proof of his title, and that he exhibit and file his title papers. He admits that he received the possession of the land under the contract; but alleges that before he obtained the possession, suit had been brought for the land against Herndon, by a certain Mark Hardin, claiming under an adverse, and, as he is informed and believes,paramount title; and he charges Herndon with fraudulently concealing from him the fact of a suit having been brought by Hardin, when the possession was delivered. He states that he tendered to Herndon the amount of the first instalment in specie and a bond for. five hundred dollars which he held on him, and demanded a title to the land; but Herndon failed to make the title and acknowledged his inability to do so. He moreover charges, that, discovering he had been deceived by the representations of Herndon, both as to the title and health of the place, he determined to abandon the contract and possession; which he accordingly did, after having given due notice to Herndon of his intention to do so.
He protests against the court decreeing a specific execution of the contract; and after making his answer a cross bill, prays for the contract to be cancelled, &c.
To the answer of Lewis, which was made a cross bill, Herndon responded, admitting that some such enquiries about the disease and title as are mentioned in the answer of Lewis, were made about the time the contract was made; but he denies that in his reply to those en-quiries aiy false statements were made. He admits the disease had prevailed in some parts of the county of Breckinridge, but denies that it had ever visited the vicinity of the land, to his knowledge or belief. He ad- *361 ntits that Hardin had previously brought suit for the land, but alleges that the s.uit had been determined •against him, and when he sold the land to Lewis he con--eidered Hardin’s claim tobe at an end. He admits that -after the sale made by him to Lewis, Hardin commenced another suit for the land, and charges that Lewis was shortly thereafter informed thereof. He alleges that he and those through whom he claims had been possessed of the land for upwards of twenty years before Hardin’s suit was commenced; and though he believes -Hardin’s claim to be of no validity, when brought into contest with that under which be claimed, he charges that for the purpose of, quieting ail controversy with •Hardin and Lewis, he has purchased the claim of Hardin and obtained bis title, which he exhibits for the inspection of the court. He states that in due time he will exhibit bis title, which he conceives to be complete, when coupled with the possession ever since February 17-99. He insists upon a specific execution of the contract.
The court below on a final hearing decreed the cor--Iract to be executed by boil),parties; and from that decree Lewis has appealed.
The evidence, we think, is not of a character calculated to establish in Herndon that clear and indisputable title which ought to be shewn by a complainant seeking the aid of a court of equity to enforce the specific performance of a contract for the sale of land.
There is contained in the record enough to shew that since the commencement of this suit Herndon has obtained a conveyance of Hardin’s title; but that title is admitted by Herndon to be of no validity when brought in competition with the title claimed by him when he contracted with Lewis, and there Is no sufficient evidence in the cause to prove that Herndon is invested with the title under which he then claimed. He appears to have then claimed under the title of Hargis’, and it is proved that he and those through whom he claimed had been possessed of the land for upwards of twenty years before his sale.to Lewis. That evidence-may be sufficient to shew that when brought into com petition with the title of Hargis, that which Herndon has since obtained from Hardin could not' prevail; hut it is evidently insufficient to shew that Herndon is now invested with the title of Hargis. Were it even conced *362 ed that from the lapse of time the land has been oceu-pied under the title of Hargis, a conveyance from hirft might be presumed, it would not thence follow that the title might be. inferred to be in Herndon; for Herndon appears not to have been possessed of the land sufficiently long to raise a presumption of his having obtained a conveyance from his immediate vender, and there is not a particle of proof tending to establish the fact of such a conveyance having been received by him.
Under such circumstances, therefore, we are not at liberty to infer that Herndon has become invested with the title of Hargis, and as that title is admitted by him to be paramount to the title which he has obtained from Hardin, he cannot be admitted to have shewn himself entitled to the aid of a court equity.
In fact, by failing to shew an ability to convey the title of Hargis, Herndon has evinced the propriety of Lewis’ conduct in abandoning the possession of the land, and instead of the decree which was pronounced by the court below, the contract ought to have been cancelled and Herndon’s bill dismissed with costs.
The decree must be reversed with costs, the cause remanded to the court below, and a decree there entered not inconsistent with this opinion.